LUCY H. BOGGS, VERONICA F. BLAUROCK, LIEGE F. HOLMES, MARY J. BELTZHOOVER, EDITH BELTZHOOVER, ANNA PARK, MARGARET PRICE, LOUISE H. WEBSTER, SALLY B. GRYMES, MARY H. GRIMES, CHARLES J. WADE, J. H. BOGGS, LAURA M. POWELL, KATE WILKINSON, MARY WASNER, MERTIE FARQUHAR and MABEL STENNETT,

*vs.*

THE BELLEVUE, INCORPORATED, OF WASHINGTON, D. C., a Delaware corporation.

*New Castle, July* 29, 1931.

*Thomas Muncy Keith,* and *Jesse C. Duke,* of Washington, D. C., for complainants.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, and *John A. Thompson* and *Thomas H. Patterson,* both of Washington, D. C., for defendant.

THE CHANCELLOR: The defendant was created in June, 1928, for the purpose of erecting, owning and operating a hotel in the City of Washington, D. C. The hotel was completed and opened for business in December, 1929. It is favorably located near the capitol grounds, facing the Union Station Plaza.

The organizers of the corporation conceived the idea of operating it along co-operative lines. Their plan was to offer to each subscriber to its preferred stock the right to rent a room at as low a rental as would be consistent with the cost of operation. The complainants are for the most part persons who subscribed for preferred stock and who became renters at the rate originally fixed as reasonable. The erection and equipment of the building cost over $600,-000, the exact sum for the moment escaping my memory. The balance sheet as of September 30, 1930, shows only $80,225 of capital stock to have been sold. So that it appears that the hotel was built and furnished for the most part on borrowed money. Its borrowings are evidenced

principally by so-called first and second trust notes and by unsecured notes.

Creditors therefore have a much larger stake in the enterprise than have the stockholders.

During its first year of operation, the defendant was able to show an operating profit of a little over fifteen thousand dollars. Its indebtedness charges however far exceeded the operating profit and left a deficit for the year of a little over thirty thousand dollars. About January or February of the present year, the directors concluded that it would be advisable to raise the room rentals and to ask the stockholders to lend the corporation a total of about fifteen thousand dollars. They estimated that a loan in that amount and the additional annual receipts to be yielded by an increase of two dollars and fifty cents per month in rentals to stockholders and five dollars per month in rentals to non-stockholders, would place the corporation in such condition that in about four years its affairs would be established on a firm basis.

When it was proposed to call upon the stockholder-tenants, who were government employees, to pay two dollars and fifty cents a month more for their rooms, some indignation was felt by them. They seemed to take the view that the terms of their subscription agreements forbade the increase. In this they were plainly in error. As a result, I think it is fair to say, of the expressed desire of the defendant to obtain the increase in rent revenue, certain of the stockholders were stirred to bring this suit. According to their own showing, if a receiver should be appointed, the valuable asset which the corporation owns would be entirely sacrificed to the creditors to the exclusion of the stockholders.

The creditors, however, whose claims, if liquidated out of the property, would absorb it, are not asking for a receiver. All the trade creditors are being paid promptly; so that the defendant is having no trouble to keep the hotel in operation. The other creditors, the holders of the trust notes and the other notes, appear to be content to give the

defendant time to work out its problems. Even if their letters to the corporation expressing a willingness to withhold pressure be rejected as evidence, the fact remains that they have taken no proceedings anywhere to enforce payment. None of them have intervened in this suit, though they know of it. This is true with respect to all of them except one, Minnie A. Strassner, who holds a second trust note for five hundred dollars. This note appears to be one that the defendant claims is not now collectible because of a certain contract arrangement with its former holder. I should want more evidence concerning the immediateness of the defendant's duty to pay that note than is contained in the record, before concluding that the holder of it is in a position successfully to enforce its payment at this time.

The testimony shows that if the creditors were to come down on the defendant with demands of immediate payment, the defendant could not satisfy them either out of cash or assets readily convertible into cash. Neither has it sufficient credit resources to put it in possession of sufficient cash for that purpose.

I think it is safe therefore to say that the defendant is insolvent in that it is unable to pay all its past due obligations.

But, notwithstanding that fact, I am not persuaded that a receiver should be appointed. From the viewpoint of the stockholders, some of whom are seeking a receiver, it seems to me that they would be more injured than benefited by the relief they seek. So long as the creditors, who in point of fact have by far the greater if not all the stake in the corporation, show a disinclination to take steps that will eventuate in the complete destruction of the stockholders' investment, I have difficulty in seeing upon what reasonable ground it could be said to be an exercise of sound discretion for me, on the request of some of the stockholders, to enter a decree that would in effect wipe out the investment of all of them. For I take it that a receivership would

so precipitate the difficulties of the defendant that in the end a sale and liquidation would be inevitable, and the stockholders would in all likelihood secure nothing.

Now that outcome would be highly injurious to the stockholders, and at the same time would in all probability occasion a loss to the creditors, for it is hardly reasonable to suppose that in these times of depression the assets of the corporation could be made to pay the creditors in full. As I see it, therefore, a receivership would certainly deprive the stockholders of all possible hope of salvaging the corporation, a hope which the present indulgence of the creditors holds out, and at the same time produce a situation which would in all probability, through a sacrificial sale at this inopportune time, result in loss to the creditors. If the defendant is permitted to enjoy the leniency which the creditors are now affording, it may be that as business conditions improve the corporation will be able to set its feet on enduring ground.

I think that this is no time for the courts, in the exercise of the discretionary powers committed to them, to be unduly severe in bearing down on a debtor corporation when those most if not entirely interested, viz., the creditors, as here, are disposed to extend to it liberal indulgences.

If any of the creditors had obtained judgment and were contemplating executions, or if any of them were menacing the defendant by threats of suits and possible execution levies after obtaining judgment, and it appeared that the corporate assets were such as to show a stockholder's equity which would be probably dissipated by haphazard execution sales, the case would be different. But here, if the complainants be correct, in the first place the equity of the stockholders is little or nothing, and the disaster of a sale at this time or in the near future would be visited solely upon creditors. Why should the court exercise its discretion to thrust upon creditors a liquidating receivership on the application of stockholders who, on the showing they

make, can receive no material benefit out of the wreckage their application would entail?

It will not do to say that the court could hold and operate the corporation through an operating receiver and protect it from the grasp of creditors for such length of time as its affairs could be adjusted to a safe going basis, and then turn it back to the stockholders. There are two objections to that course which occur immediately. In the first place an operating order whose duration was long enough to serve that purpose would stretch out in all probability to a length of time that any court would be most reluctant to spend in conducting, through its receiver, a hotel business. In the next place, inasmuch as the creditors are showing no disposition to grasp the assets, why should a receiver be named to defeat their grasping?

It is urged that the corporation has a right of recovery against some of its officers, or former officers, for secret profits fraudulently obtained by them. This charge rests more on assertion than evidence. It may be true, but it is not shown by proof that discloses a probability of its truth. Furthermore, a receiver in insolvency is not indispensably necessary to a recovery of such alleged profits, if they were obtained.

The venture upon which the defendant embarked is young. It was undertaken on too little capital. Hence it started out with a disproportionate burden of debt. Notwithstanding it may be shown to be insolvent in that it could not pay its debts if demanded, yet I can see no good purpose to be served by throwing it into a receivership upon the application of a class of parties in interest who, so far as I can see, would obtain no benefit from the relief they seek, and who would work an injury on the other hand to another class who have not chosen to request that the relief be granted, and who so far as we can judge are the only ones who have a real financial interest at stake. It seems strange to me that stockholders should want to cast a receivership on their corporation at the incipiency almost of

its existence, when it is showing a fair operating profit, when its creditors though large are not pressing it, and where the almost inevitable result of the thing they seek is the complete destruction of all hope of realizing anything in return for their investment. In the interest of the other stockholders, and more particularly in the interest of the creditors whose loss from a receivership and consequent sale would in all probability be certain, I think the few stockholders who make the application should be denied what they ask.

The case before me is thrown by its facts entirely into the realm of discretion. Matters lying in discretion are frequently the most perplexing to determine. In this one, I think that under all the facts the corporation should be allowed to proceed under the control of its managers. Seeing nothing to be gained for the stockholders in whose interest the bill is principally filed, for only stockholders are parties to it, it is a wiser use of the discretionary power to refuse than to grant the drastic remedy which the bill seeks.

The bill will therefore be dismissed with costs on the complainants.